UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:07-cr-0141 WBS KJN P |
|---|---|
| Respondent, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ANTHONY BOYKIN, | |
| Movant. | |

I. Introduction

    Movant is a federal prisoner, proceeding without counsel, with a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  Movant challenges his 2013 convictions on various drug offenses.  He is serving a sentence of 210 months.

    Two claims are raised in the motion:  movant alleges that the indictment was flawed or invalid, and that the government lacked standing, under Lujan v. Defenders of Wildlife, 504 U.S. 560-61 (1992), to demonstrate an injury in fact under the statute, and thus his conviction must be reversed because the court did not have jurisdiction.  Movant claims that all the grounds in his motion were not previously presented due to ineffective assistance of counsel.  Movant contends that this motion is timely based on newly-discovered evidence.  Respondent opposes the motion. As set forth below, the undersigned recommends that the motion be denied.

////

II. <u>Factual Background</u>

For purposes of these findings and recommendations, the undersigned adopts the factual summary contained in the order of the Ninth Circuit Court of Appeals affirming movant's conviction:

> Boykin and his brother, Patrick, sold methamphetamine and cocaine to three different confidential sources from August 29, 2006 to March 26, 2007. These controlled purchases usually took place at 251 Wilbur Avenue, or at a nearby store, Wilbur Market.[FN1] The investigation of the Boykins was conducted by a Narcotics Enforcement Team, NET–5, which was composed of local and state law enforcement representatives and supervised by the California Department of Justice, Bureau of Narcotic Enforcement. NET–5 also worked with federal law enforcement agencies, including the FBI.
>
>> FN1  The Boykins and others in the neighborhood would frequently "hang out" and congregate at 251 Wilbur Avenue, a residence owned by the Boykins' mother.
>
> On August 29, 2006, the government directed a confidential source, Rachel Rios, to call Boykin to purchase two ounces of methamphetamine. Boykin instructed Rios to go to an apartment complex, where she met with an unidentified female while he watched the transaction from a second-story window. The government later deactivated Rios as a source when it discovered that she was still selling methamphetamine, and as a result, the government recruited a new confidential source, Crystal Housley.[FN2]
>
>> FN2  The record is inconsistent with respect to the spelling of Housley's name. Because the trial transcript spells her name as "Housley," the Court will do the same.
>
> Housley participated in two controlled purchases involving Boykin, on September 13, 2006, and September 28, 2006. In the first purchase, Housley called Boykin and asked to purchase cocaine. He directed her to meet with Patrick, who completed the transaction. In the second purchase, Housley called Boykin and asked to buy methamphetamine. Boykin met her at Wilbur Market and completed the transaction.
>
> On or about October 27, 2006, Housley was arrested on federal fraud charges. However, she was not deactivated as a source until December 23, 2006, after she pled guilty to fraud. Housley had been handled by Detective Thomas Oakes, a narcotics detective with the Yuba County Sheriff's Department and a member of NET–5, with whom she had a close relationship. At Boykin's trial, Detective Oakes testified that upon learning of Housley's pending federal fraud charges, he immediately delivered her to federal agents, deactivated her as an informant, and paid no further monies to her after she was arrested. This testimony was inaccurate, and

ultimately led to a stipulation that, in fact, Housley continued to work as an informant for almost two months after her arrest, and she was paid during that time period.

Detective Oakes' brother, Jonathan "Johnny" Oakes, was a friend or associate of the Boykins. Johnny was known to "hang out and be in contact" with them, and Detective Oakes testified that Johnny and Boykin played pool together.[FN3]

> FN3  The details of the relationship between Johnny Oakes and the Boykins is not entirely clear from the record, but the testimony of Detective Oakes prompted Judge Shubb to remark, "I thought only in the movies did police officers investigate cases where their brothers were personal friends of the person they were investigating." Judge Shubb found the relationship so "remarkable" that he thought it would be wrong to not let the jury hear about Johnny Oakes' relationship with the Boykins.

Despite the conflict arising from the relationship of Johnny to the Boykins, Detective Oakes continued to participate in the investigation, although the extent of his participation was disputed.[FN4]

> FN4   Detective Oakes testified that his brother's relationship with the Boykins prompted his supervisors to limit his involvement in the investigation by assigning him to manage informant Housley. Detective Oakes acknowledged that he was present for the two drug transactions with Housley. He could not recall whether he was present or part of the surveillance team for transactions involving Walton. Detective Oakes described his role in the case as "very limited," which the Court construes to mean that his role was more limited than at least some other members of NET–5 working on the Boykin case.

After Housley was deactivated, the government recruited a third confidential source, Robert Walton, who conducted controlled purchases from the Boykins on February 3, 2007, February 9, 2007, March 16, 2007, and March 26, 2007. Boykin often facilitated the transaction over the phone, or he directly passed the drugs to Patrick, who delivered them to Walton.

On appeal, Boykin challenges the sufficiency of the evidence only for the drug transaction of February 9, 2007. Patrick arranged for that transaction to take place at 251 Wilbur Avenue. Both brothers were outside the residence when Walton arrived. Walton left with Patrick to pick up a scale and met an unidentified Hispanic male at Wilbur Market to obtain the drugs, after which they returned to 251 Wilbur Avenue. Walton remained in Patrick's truck while Patrick went in the house. Boykin had also left 251 Wilbur Avenue, but he returned after Patrick and Walton did. An unidentified white male also entered the residence while Walton sat in Patrick's truck. Officers conducting surveillance testified that Patrick made several trips in and out of 251 Wilbur Avenue before completing the

3

transaction with Walton. The government also introduced evidence that several phone calls were made between Patrick and Boykin during the relevant time period. The evidence showed that Patrick began arranging for the drug transaction at 11:58 a.m., and it took place at 2:11 p.m. Meanwhile, Boykin called Patrick at 12:35 p.m., and Patrick called Boykin at 1:51 p.m. and 3:04 p.m.

On March 29, 2007, law enforcement officials executed search warrants at 251 Wilbur Avenue, Patrick's residence, and Boykin's residence. At Boykin's residence, agents seized $27,000 in cash, scales with drug residue, and cellular telephones used during the controlled purchases. At 251 Wilbur Avenue, agents found a small amount of methamphetamine with packaging material, two scales, and several guns, including a sawed-off shotgun with Boykin's fingerprints.

United States v. Boykin, 785 F.3d 1352, 1356-58 (9th Cir.), cert. denied, 136 S. Ct. 272 (2015).

III.  Procedural Background

Boykin and Patrick were charged by indictment with one count of conspiracy to distribute and possess with intent to distribute methamphetamine and cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1); six counts of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and one count of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1). Patrick pled guilty to the conspiracy count, but Boykin proceeded to a jury trial. On March 4, 2011, the jury returned its verdict, finding Boykin guilty of the conspiracy count and six counts of distribution, and acquitting him of one count of distribution of methamphetamine.

The Presentence Report (PSR) recommended a base offense level of 34, plus a two-level increase under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(1) for possession of a firearm, resulting in an Adjusted Offense Level of 36. The PSR recommended 262 months of incarceration, which was at the low end of the advisory guideline range, after taking into account Boykin's criminal history level of IV.

The district court gave Boykin a two-level reduction for acceptance of responsibility, which placed the Adjusted Offense Level at 34. Finding that Boykin's criminal history was accurately stated in the PSR, the court concluded that the guideline range was 210 to 262 months, and sentenced Boykin to 210 months to avoid any sentencing disparity with Patrick, who also received a sentence of 210 months.

[Petitioner was sentenced on April 29, 2013, to 210 months in prison.]

Boykin filed a timely notice of appeal, challenging the sufficiency of the evidence on Count Six and arguing that the district court erred by not granting a downward departure for sentencing manipulation, and by not finding his criminal history to be overstated. After initial briefing was complete, Boykin filed a pro

4

> se supplemental brief, arguing the district court committed plain error by applying a two-level enhancement for possession of a firearm, and by failing to conduct an individualized analysis of his participation in the conspiracy. On September 24, 2014, Boykin's counsel sent a letter to the Court, requesting remand in light of Amendment 782 to the U.S. Sentencing Guidelines.

United States v. Boykin, 785 F.3d 1352, 1358-59 (9th Cir.), cert. denied, 136 S. Ct. 272 (2015).

The Ninth Circuit Court of Appeals affirmed petitioner's conviction and found no sentencing error by the district court. Id., 785 F.3d at 1356. The Court of Appeals denied petitioner's motion for rehearing, and the mandate took effect on July 22, 2015. (ECF No. 167.) On August 13, 2015, movant filed a petition for writ of certiorari. (ECF No. 179-1.)

On October 5, 2015, the Supreme Court denied certiorari. Boykin v. United States, 136 S. Ct. 272 (2015) (ECF No. 179-1).

On December 7, 2015, the parties stipulated to a reduction in movant's sentence based on the retroactive application of Amendment 782 to the Sentencing Guidelines. (ECF No. 171.) On December 16, 2015, the sentencing reduction was granted, and an amended judgment reducing movant's sentence to 168 months was entered. (ECF Nos. 172, 173.)

The instant motion was filed on August 31, 2016. See Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (under the mailbox rule, the petition is deemed filed when handed to prison authorities for mailing). Respondent filed an opposition; movant did not file a reply.

IV. Applicable Law

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Relief is warranted only where a petitioner has shown "a

fundamental defect which inherently results in a complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration in original) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotation marks omitted). To warrant a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. Id. Mere conclusory assertions in a § 2255 motion are insufficient, without more, to require a hearing. United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980); see also United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993) ("merely conclusory statements" are insufficient to require a hearing on cause or prejudice.)

V. Discussion

   A. Timeliness

First, it appears that movant believes his motion was untimely-filed because he argues that newly-discovered evidence demonstrates that his conviction is void, and that there is no time limit on a void judgment under Rule 60(b)(4) of the Federal Rules of Civil Procedure.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed a one-year statute of limitations that begins to run on "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).

In this case, judgment was filed on May 8, 2013. (ECF No. 151.) The Ninth Circuit finalized the direct appeal, affirming movant's conviction and sentence, by issuing its mandate on July 22, 2015. On October 5, 2015, the Supreme Court denied certiorari, and the conviction became final. The instant § 2255 motion was filed on August 31, 2016, before the one year limitations period expired. Because the motion was timely-filed, the court need not address movant's arguments concerning newly-discovered evidence.

B. <u>Procedural Default</u>

Respondent argues that movant's claims are procedurally defaulted because movant did not pursue them on direct appeal. Movant appears to concede that he did not raise such claims on direct appeal, but argues that such failure was due to ineffective assistance of counsel. (ECF No. 174-1 at 4-5.)

In <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998), the United States Supreme Court held, in the context of a § 2255 motion, that "where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice" . . . or that he is "actually innocent." <u>Id.</u> This is because "habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" <u>Id.</u> at 621 (citation omitted). Accordingly, "most claims are procedurally defaulted by both federal and state prisoners in habeas proceedings when not raised on direct appeal, absent a showing of cause and prejudice or actual innocence." <u>United States v. Braswell</u>, 501 F.3d 1147, 1150 n.1 (9th Cir. 2007).

Cause may be based on "some objective factor external to the defense [that] impeded counsel's efforts to comply with the . . . procedural rule . . . ." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Cause may also be established by attorney error that rises to the level of constitutionally ineffective assistance of counsel. <u>United States v. Ratigan</u>, 351 F.3d 957, 964-65 (9th Cir. 2003). Independent claims of ineffective assistance of counsel, and claims that "could not be presented without further factual development" are excluded from the cause and prejudice requirement and may be heard on collateral review, even though the defendant could have, but did not raise the claim on direct appeal. <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003).

Here, movant has not shown cause or prejudice with regard to his two defaulted claims.[1] Movant challenges the indictment and contends the government did not have standing to bring charges against movant, both of which could have been raised at trial or on appeal. Movant was represented by counsel at trial and on appeal, and movant identifies no "external impediment"

---

[1] Movant does not argue that he is factually innocent.

7

that prevented counsel from raising such arguments. The undersigned has considered whether movant's argument concerning standing could be construed as a jurisdictional challenge. United States v. Cotton, 535 U.S. 625 (2002). However, as argued by respondent, district courts always have subject-matter jurisdiction to hear cases that allege a violation of federal criminal law, both under the Constitution and by statute. U.S. Const. Art. III § 2 ("The judicial Power shall extend to all Cases . . . arising under this Constitution, the Laws of the United States . . . to Controversies to which the United States shall be a Party"); 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.")

Finally, the undersigned considers whether ineffective assistance of counsel may provide cause or prejudice for movant's procedural default. Movant claims that counsel failed to "show all possible avenues for a defense," and failed to "properly inform client of the law and all possible defenses." (ECF No. 174-1 at 3, 5.) Respondent argues that movant failed to adequately plead or prove ineffective assistance of counsel.

In Strickland v. Washington, the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." Strickland, 466 U.S. 668, 694 (1984). Establishing "deficient performance" requires the movant to show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. "Deficient performance" means representation that "fell below an objective standard of reasonableness." Stanley v. Cullen, 633 F.3d 852, 862 (9th Cir. 2011) (citing Strickland, 466 U.S. at 688).

"To demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Harrington v. Richter, 562 U.S. 86, 111-12 (2011) (quoting, Strickland, 466 U.S. at 693). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the movant as a result of the alleged deficiencies. Strickland, 466 U.S. at 697.

Here, movant's vague references to ineffective assistance of counsel are not supported by argument or evidence, and cannot serve to excuse his failure to raise such claims on direct appeal. Because movant failed to adequately plead his ineffective assistance of counsel argument, the undersigned cannot find that movant has met the standards required under Strickland.

Accordingly, because movant did not assert the instant two claims in his direct appeal, and failed to demonstrate such failure should be excused by cause and prejudice, such claims are procedurally defaulted and should not be considered by this court.

IT IS HEREBY RECOMMENDED that:

1. Movant's motion to vacate, set aside, or correct his sentence (ECF No. 174) under 28 U.S.C. § 2255 be denied; and

2. The Clerk of the Court be directed to close the companion civil case No. 16-cv-2133 WBS.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If movant files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 28, 2016

/boyk0141.257

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

9